IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| Joseph Sewell,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Northrop Grumman Ship Systems, Inc.,<br><br>　　　　Defendant. | No. 1:06-cv-00823-LG-RHW<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**<br><br>(Civil Rights-Employment)<br><br>Jury Trial Demanded |

### PRELIMINARY STATEMENT

1. This action seeks injunctive and declaratory relief to prevent continuing, systemic, and unjustified race discrimination by the employer, NORTHROP GRUMMAN SHIP SYSTEMS, INC. ("NGSS"), with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of Black employees at NGSS, including severe, pervasive, and ongoing harassment of Black employees through longstanding maintenance of a racially hostile work environment. In addition to injunctive and declaratory relief, and all other available equitable relief, plaintiff seeks compensatory and punitive damages.

### JURISDICTION

2. This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); and Civil Rights Act of 1866, 42 U.S.C. § 1981 ("1981"). Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ l343 (3)&(4); 28 U.S.C. § 1331 and 28 U.S.C. § 1337. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.

Plaintiff Joseph Sewell's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00823-LG-RHW

1

## PARTIES

3. Joseph Sewell is a Black employee of NGSS who has been employed by NGSS for over 16 years.

4. NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a business that is engaged in the construction and refurbishing of seagoing vessels, both military and civilian. It is located in Pascagoula, Mississippi. It is an employer for purposes of Title VII. On the basis of information and belief, plaintiff alleges that NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a successor in interest to INGALLS SHIPBUILDING COMPANY.

5. NGSS has received numerous contracts and substantial income from agencies and departments of the Federal Government, and because of the receipt of said contracts and income it is subject to Title VI of the Civil Rights Act of 1964, as amended. NORTHROP GRUMMAN SHIP SYSTEMS, INC., and its predecessor, INGALLS SHIPBUILDING COMPANY, therefore are, and have been, a federal contractor at all times relevant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. All conditions precedent to jurisdiction pursuant to section 706 of Title VII of the Civil Rights Act of 1964, as amended, have been complied with to wit: an appropriate charge of employment discrimination has been filed with the Equal Employment Opportunity Commission, and a notice of right to sue was issued by the Equal Employment Opportunity Commission.

7. Plaintiff has filed a timely complaint based on the time limits contained in section 706 of Title VII of the Civil Rights Act of 1964, as amended.

8. On or about December 20, 2000, the Equal Employment Opportunity Commission issued a determination finding reasonable cause to believe that a racially hostile work environment existed at NGSS.

9. Attempts at conciliation regarding the finding of a racially hostile work environment, which was and is statutorily required, failed.

Plaintiff Joseph Sewell's Complaint for   2
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00823-LG-RHW

**PROCEDURAL BACKGROUND PRECEDING THIS COMPLAINT**

10. An initial complaint was filed in the United States District Court for the Southern District of Mississippi on March 21, 2001, in which eleven (11) persons, named as representative plaintiffs, and the organization, Ingalls Workers for Justice, alleged class-wide discrimination at NGSS on the basis of race. The case was assigned a case number of 1:01-CV-111(G)(R).

11. A First Amended Complaint was filed on April 26, 2001 in the initial case, additionally alleging maintenance of a racially hostile work environment at NGSS.

12. A Complaint in Intervention was filed on February 13, 2003 in the initial case, necessitated by the Court's dismissal of the following causes of action and parties from the First Amended Complaint on February 28, 2002:

   a) Dismissal of the class action allegations seeking compensatory and punitive damages;

   b) Dismissal of the claim for relief alleged pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*;

   c) Dismissal of the claim for relief alleged pursuant to the Thirteenth Amendment to the U.S. Constitution;

   d) Dismissal of organizational plaintiff INGALLS WORKERS FOR JUSTICE;

   e) Dismissal of defendant LITTON INDUSTRIES; and

   f) Dismissal of defendant NORTHROP GRUMMAN.

13. A Second Amended Complaint was filed on April 7, 2003 in the initial case.

14. On or about March 16, 2004, the initial case was reassigned to the Honorable Louis Guirola, Jr., District Court Judge; on December 30, 2004, the Honorable Robert H. Walker, Magistrate Judge, was assigned to be the Magistrate Judge for the initial case.

15. On August 17, 2006, Magistrate Judge Walker entered an order entitled, "Order Requiring Separate Complaints," which, *inter alia*, severed the plaintiffs' claims from one another, and required the filing of new complaints and assignment of new case numbers for each of the individual plaintiffs in Case No. 1:01-CV-111(LG)(RHW).

Plaintiff Joseph Sewell's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00823-LG-RHW

3

16. At some point during the period of time from August 17, 2006 through September 7, 2006, plaintiff Joseph Sewell's severed action was assigned the case number of 1:06-cv-00823-LG-RHW.

## FACTUAL STATEMENT

## RACIAL DISCRIMINATION GENERAL ALLEGATIONS

17. The defendant, NGSS, has intentionally pursued and continues to pursue employment policies and practices that constitute systemic discrimination against plaintiff and other Black employees and that deprive or tend to deprive such persons of equal employment opportunities within NGSS.  NGSS has intentionally implemented these policies and practices, among other ways, as follows:

a) By failing to treat Blacks on an equal basis with Whites.

b) By using selection devices for promotions that have an adverse impact on Blacks, are not job related and have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures, and have more adverse impact than equally valid alternatives.

c) By using evaluation procedures in the consideration of employees for promotions that discriminate against or illegally exclude Black employees from consideration.

d) By failing to provide Black employees with equal opportunities for advancement within the company because of their race.  Black employees are denied promotions despite their qualifications and years on the job.  It is not uncommon for a Black employee to be denied a promotion at NGSS in an area she or he has worked in for twenty years and then be assigned to train a White employee with less seniority.

e) By maintaining a double standard in the granting of promotions to White employees vis à vis Black employees.  Practices including cronyism, nepotism, word-of-mouth recruitment, failure to post or advertise employment opportunities, and/or the placement of White employees in acting positions have

Plaintiff Joseph Sewell's Complaint for                                                                                                          4
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00823-LG-RHW

    inured to the determent of Black employees historically.

    f) By restricting access to employment opportunities for Black employees and maintaining a workforce in which its supervisory and management personnel has been and continues to be predominately White.

    g) By engaging in a policy in which positions are actually filled even before they may be posted or advertised as an available position.

    h) By demoting Black employees at a disproportionate rate as compared to White employees.

    i) By retaliating against Black employees after they have complained or challenged, in any way, the discriminatory policies, procedures, and practices that permeate the work environment at NGSS.

    j) By denying Black employees opportunities to go on trips or sea trials where they would be able to earn substantial amounts of overtime.

    k) By maintaining a practice of "job steering," resulting in Black employees being assigned to, and then denied the opportunity to move out of, dangerous, dirty, and generally less desirable work areas because of their race.

    l) By instituting and allowing the continuance of a racially hostile work environment for Black employees.

18. This pattern or practice denies the full exercise of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

19. NGSS has been aware that its actions with regard to the treatment of Black employees were and are in violation of federal statutes prohibiting discrimination on the basis of race.

**SPECIFIC CLAIMS FOR RELIEF**

**TITLE VII AND § 1981**

20. Plaintiff incorporates paragraphs 1 through 19, as though fully set forth herein.

Plaintiff Joseph Sewell's Complaint for    5
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00823-LG-RHW

21. Plaintiff has applied for promotive positions on numerous occasions on which he has been informed by written communication that he was not qualified for the various positions for which he has applied. However, plaintiff was qualified for the positions for which he applied, but was not selected. Plaintiff was denied the promotions for which he was qualified because of his race and because management discovered and disapproved of the fact that he was married to a White woman. The means used to determine plaintiff to be unqualified have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures. This includes the following instances:

      a) On or about April 4, 1997, plaintiff was rejected for a position as Security Specialist, a position for which he applied and was qualified, but for which he was not selected because of his race.

      b) On or about October 14, 1999, plaintiff was rejected for a position as Test Engineer, a position for which he applied and was qualified, but for which he was not selected because of his race.

      c) On or about January 27, 2000, plaintiff was rejected for a position as Shift Captain, a position for which he applied and was qualified, but for which he was not selected because of his race.

      d) On or about May 25, 2004, plaintiff was rejected for a position as Visitor Control Coordinator, a position for which he applied and was qualified, but for which he was not selected because of his race.

22. Plaintiff has applied for promotive positions on numerous additional occasions, and has been informed by written communication that he was qualified for the various positions for which he has applied, but was not selected. He was denied the promotions for which he was qualified because of his race and because management discovered and disapproved of the fact that he was married to a White. The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures. This includes the following instances:

Plaintiff Joseph Sewell's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00823-LG-RHW

6

a) On or about April 18, 1998, plaintiff was rejected for a position as test engineer, a position for which he applied and was qualified, but for which he was not selected because of his race.

b) On or about May 14, 1999, plaintiff was rejected for a position as test engineer senior, a position for which he applied and was qualified, but for which he was not selected because of his race.

c) On or about February 15, 2000, plaintiff was rejected for a position as test engineer, a position for which he applied and was qualified, but for which he was not selected because of his race.

d) On or about June 13, 2003, plaintiff declined an interview for the position as Warehouse Supervisor because he was not considered for the first shift. He believes that he should have been considered for first shift because of his seniority and that he was not considered for the first shift position because of his race.

e) On or about June 15, 2004, plaintiff was rejected for a position as safety representative, a position for which he applied and was qualified, but for which he was not selected because of his race.

23. In addition to his own unsuccessful attempts to be promoted to positions for which he was qualified, plaintiff has observed both that Black employees are not promoted in spite of their qualifications and seniority as well as the lack of qualifications of White employees who have been promoted. Therefore, plaintiff did not apply for promotive positions for which he was qualified between the years 2000 and 2003, and plaintiff was not selected for promotion to any such position. The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

24. Plaintiff was demoted from Test Engineer to Warehouse Clerk in 1995 after it became known by management personnel that he was married to a White woman. Plaintiff was

Plaintiff Joseph Sewell's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00823-LG-RHW

7

told that the demotion was due to "a slow period." However, similarly situated White employees with fewer years of seniority were not demoted at that time, and those White employees who were demoted were not similarly demoted into non-management-level jobs. Plaintiff was not informed of the reason why he was demoted while White co-workers with fewer years of seniority were not. Plaintiff was told that he would be re-promoted when new positions became available; however, when he re-applied for the position of test engineer, plaintiff received a letter informing him that he was not qualified for the position he had previously held. All of the White employees who were demoted were later re-promoted. Plaintiff believes that the demotion and failure to restore his position were due to management's disapproval of his interracial marriage, and led to the subsequent continuing discriminatory practice of the denial of promotions set forth in paragraphs 21 through 23 and incorporated as though fully set forth herein.

25. Plaintiff has made his supervisor(s) aware that he desired to be chosen to participate in sea trials. However, he has never been selected to participate in any sea trials and/or other PSA trips in spite of being qualified to be chosen, while his similarly situated White colleagues have overwhelmingly been selected to do so. Furthermore, the selection process for participating in sea trials has never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

26. Plaintiff has been subjected to racial job tracking that assigns Black employees at NGSS at a disproportionate rate as compared to White employees to the most undesirable, dirtiest, and dangerous employment environments in the workplace. This includes the following instance(s):

> a) From 1995 to 2004, while he was a Warehouse Clerk, plaintiff was forced to work either in the hot sun or in the cold, and assigned to lift extraordinarily heavy materials by himself, and perform clean up assignments that were normally assigned to the Labor Department, while similarly situated White employees were not required to perform those assignments.

27. Plaintiff has been subject to the practice of forcing Black employees

Plaintiff Joseph Sewell's Complaint for                                                                                               8
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00823-LG-RHW

disproportionately as compared to White employees to work with injuries, without reasonable accommodation of disabilities, or without provisions being made for medically imposed work restrictions. This includes the following instance:

    a) In 2004, plaintiff injured his knee, and when he returned to work with a light duty restriction, he was told there was no work and sent home for two weeks.

28. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to offensive racially derogatory writings, depictions, and/or graffiti on a constant basis in a number of places at NGSS since he began to work at NGSS, and as recently as April of 2006. NGSS knows or should have known of the presence of offensive racially derogatory writings, depiction, and/or graffiti in its workplace, but has failed to take steps to prevent or correct promptly its occurrence. Plaintiff has not complained about each and every instance of having been exposed to the offensive racially derogatory writings, depictions, or graffiti because plaintiff believed it would be useless so to do, given the historical lack of sufficient response on the part of NGSS. This includes the following instances:

    a) Plaintiff has seen offensive racist graffiti in the rest rooms on the west bank of the shipyard throughout his employment at NGSS, and as recently as April 2006. Plaintiff has also seen similar offensive racist graffiti in the company hospital restroom and in the warehouse restroom. Plaintiff observed that racist graffiti was removed around the time the *Thompson, et al. v. Ingalls Shipbuilding, et al.* matter was filed, but he has also observed that it re-appeared in the restrooms.

    b) Examples of the offensive racist graffiti plaintiff has observed include depictions of lynching; references to the KKK; use of the word "nigger," including statements such as, "all niggers go back to Africa;" jokes about "niggers" as "porch monkeys;" and sexually coarse statements about Black women, including references to having sex with "nigger women."

    c) Plaintiff has not complained about each and every instance of observing this offensive racist graffiti, because, based on his previous experiences and his

Plaintiff Joseph Sewell's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00823-LG-RHW

9

observations, he feared being retaliated against for complaining. NGSS was or should have been aware of the presence of the offensive racist graffiti, however, given that it was conspicuous and blatantly obvious to anyone who used the restrooms in which it appeared, including supervisory personnel, and given that plaintiff did previously complain to his immediate supervisor, Wilbert Odom, about the presence of the offensive racist graffiti.

29. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to White supervisory personnel and White non-supervisory employees using the term "nigger" or other racial epithets, including in jokes, on a constant basis in a number of places at NGSS. NGSS knows or should have known about use of the term "nigger" and other racial epithets by White supervisory personnel and White non-supervisory employees, but has failed to take steps to prevent or correct promptly its occurrence. Plaintiff has not complained about each and every instance of having heard this or other racial epithets because plaintiff believed it would be useless so to do given the historical lack of sufficient response on the part of NGSS. This includes the following instances:

   a) An employee named Richard Kelley regularly wore clothing and hats displaying the confederate flag and often made racist statements, including referring to Black persons as "niggers," Vietnamese persons as "gooks," and Chinese persons as "chinks."

   b) Another supervisor, O.L. Wilder, referred to "you people," and when plaintiff asked what he meant, the supervisor said, "you niggers."

   c) A White Warehouse Supervisor referred to Blacks as not being smart or bright.

   d) A White Supervisor said "You niggers are trying to take over."

   e) Plaintiff has heard supervisors regularly call Black workers "boys," a term he heard used as recently as 2005.

   f) A White male test engineer made racist jokes about interracial marriage, and told plaintiff that interracial marriage was unacceptable.

Plaintiff Joseph Sewell's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00823-LG-RHW

10

g) The brother of a White male Superintendent who was involved in the denial of certain of plaintiff's applications for promotion told plaintiff that he and his brother were raised not to accept interracial marriage and that interracial marriage dilutes the White race.

h) Plaintiff heard racist jokes being told regularly by employees, including supervisory personnel, throughout the duration of his employment at NGSS; those racist jokes typically featured the word "nigger."

i) Plaintiff has been called a "nigger" by a White co-worker, in about 1991.

j) Plaintiff has complained to various supervisors about the use of the word "nigger" and other racial epithets and racists statements, but the responses that have been forthcoming have been insufficient to remedy the situation and to prevent use of such offensive racially derogatory language from continuing.

30. The hostile work environment comprises and/or has culminated in the adverse treatment described in paragraphs 20 through 27, incorporated as though fully set forth herein.

31. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact of presence of offensive racially derogatory writings, depictions, and/or graffiti; ubiquitous use of the word "nigger" and other racist epithets; and nooses at NGSS.

32. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact that Black employees have not been provided equal opportunity with regard to upward job mobility.

33. The hostile work environment based on race to which plaintiff has been exposed is of a continuing and ongoing nature and constitutes a continuing violation of Title VII and § 1981.

34. NGSS has failed to take steps to remedy and correct promptly the harassing behavior occurring in its workplace. NGSS has failed to promulgate, disseminate, and enforce adequately an anti-harassment policy and failed to provide sufficient training to its employees regarding same. NGSS has failed to respond sufficiently to complaints regarding the harassment as set

Plaintiff Joseph Sewell's Complaint for  
Injunctive and Declaratory Relief and Damages  
No. 1:06-cv-00823-LG-RHW  

11

forth in paragraphs 28 through 33, incorporated as though fully set forth herein.

## APPROPRIATENESS OF EQUITABLE RELIEF

35. Plaintiff will suffer irreparable injury if the declaratory and injunctive relief requested herein is not granted, because NGSS will make employment decisions on the basis of the discriminatory procedures and practices described herein or will not remediate the racially hostile work environment that exists in its workplace. If NGSS is not enjoined from engaging in discriminatory employment practices, plaintiff will be deprived of career opportunities, which plaintiff otherwise would have been able to pursue, but for NGSS's discriminatory employment practices.

36. No plain, adequate, or complete remedy at law is available to plaintiff.  The loss of promotional opportunities, experience, and careers with NGSS cannot be adequately compensated by monetary relief.  Similarly, the continued subjection to a racially hostile work environment cannot be adequately compensated by monetary relief.

37. Unless restrained by order of this Court, NGSS will continue to pursue policies and practices, which are the same as, or similar to those alleged above.

## FIRST CLAIM FOR RELIEF

38. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 37 and further alleges for a first claim for relief as follows:

39. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS.  NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

## SECOND CLAIM FOR RELIEF

40. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 39 and further alleges for a second claim for relief as follows:

Plaintiff Joseph Sewell's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00823-LG-RHW

12

41. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS.  NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

### THE APPROPRIATENESS OF COMPENSATORY AND PUNITIVE DAMAGES

42. Defendant NGSS has caused plaintiff emotional distress and mental anguish as a proximate result of its illegal practices, and plaintiff is entitled to compensatory damages pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

43. Similarly, defendant NGSS was aware that its actions with regard to plaintiff were in violation of federal statutes prohibiting discrimination on the basis of race, and therefore, plaintiff is entitled to punitive damages.

### PRAYER

WHEREFORE, plaintiff prays that this Court:

a) Declare pursuant to 28 U.S.C. §§ 2201 & 2202 the employment practices set forth in paragraphs 17 through 34 to be unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* and the Civil Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

b) Adjudge, decree, and declare that the practices of NGSS complained of herein are violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

c) Issue a preliminary and permanent injunction enjoining NGSS, its agents, successors, employees, attorneys, and those acting in concert with it from engaging in each of the unlawful practices set forth in paragraphs 17 through 34 and from continuing other practices found to be in violation of applicable law;

d) Direct NGSS to take such affirmative steps as are necessary to ensure that the

Plaintiff Joseph Sewell's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00823-LG-RHW

13

effects of its unlawful employment practices are eliminated;

e) Enter a permanent mandatory injunction requiring that NGSS adopt employment practices in conformity with the requirements of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

f) Require that NGSS submit a comprehensive plan detailing how it plans to ensure fair and equitable job advancement opportunities for Black employees. The plan should also outline steps to be taken to ensure that jobs available remain open until the posting period has expired;

g) Require that NGSS institute a policy that affords equal opportunities for training and development. The policy should include the requirement that such training opportunities must be announced to the entire workforce as well as a procedure consisting of a rotation scheme and other procedures to ensure that training for job advancement is afforded to all those who are interested

h) Grant equitable relief, including, but not limited to, back pay, sick pay, vacation pay, disability benefits, and seniority rights to plaintiff;

i) Grant such punitive, general, and special damages as proved at trial;

j) Award plaintiff the costs and litigation expenses of this action and reasonable attorneys' fees as provided for in section 706(k) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(k), and the Civil Rights Attorneys Fees Award Act of 1976, as amended, 42 U.S.C. § 1988; and

k) Grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury.

Dated: September 29, 2006                                        SANDRA JARIBU HILL, Esq.
                                                                 Mississippi Workers' Center for

Plaintiff Joseph Sewell's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00823-LG-RHW

14

                                        Human Rights

                                        WILLIAM C. MCNEILL, III, Esq.
                                        The Legal Aid Society-Employment Law Center

                                        Counsel for Plaintiffs


                    By:    /s/ William C. McNeill, III
                            WILLIAM C. McNEILL, III, Esq.


William C. McNeill, III, Esq., MS Bar No. 42867, *Pro Hac Vice*
Denise M. Hulett, Esq., MS Bar No. 44672, *Pro Hac Vice*
Shelley A. Gregory, Esq., MS Bar No. 43443, *Pro Hac Vice*
The Legal Aid Society – Employment Law Center
600 Harrison Street, Suite 120
San Francisco, California 94107
(415) 864-8848

Sandra Jaribu Hill, Esq., MS Bar No. 10684
Mississippi Workers Center for Human Rights
213 Main Street
P.O. Box 1223
Greenville, Mississippi 38702-1223
(662) 334-1122

Plaintiff Joseph Sewell's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00823-LG-RHW

15

**CERTIFICATE OF SERVICE**

  I hereby certify that on September 29, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF System which sent notification of such filing to the following: Paul B. Eason; Maria Candace Burnette; Timothy W. Lindsay; Stephen A. Brandon.

  I hereby certify that I have mailed by United States Postal Service the documents to the following non-ECF participants:

  Tammi Liddell
  3836 Prentiss St.
  Moss Point, MS  39563

  Willie B. Richmond
  1608 Timberlane Road
  Gautier, MS  39553

  Edna M. Tubbs
  P.O. Box 501
  Escatawpa, MS  39552

                /s/ Laurel Kapros
                Laurel Kapros

Plaintiff Joseph Sewell's Complaint for                    16
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00823-LG-RHW